UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOY TERRELL SMITH,<br><br>            Plaintiff,<br><br>     v.<br><br>R.M. HUTCHINSON, et al,<br><br>            Defendants. | 1:16-cv-01924-EPG (PC)<br><br>ORDER DISMISSING PLAINTIFF'S COMPLAINT WITH LEAVE TO AMEND<br><br>(ECF NO. 1)<br><br>THIRTY DAY DEADLINE |

Plaintiff Toy Terrell Smith ("Plaintiff") is proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that he did not receive adequate mental health care, was forcibly removed from his cell in order to transfer to another prison, and suffered an inmate attack when staff left him exposed at a prison with known enemies.

Plaintiff filed the Complaint commencing this action on December 27, 2016, which is before this Court for screening.[1] (ECF No. 1.) For the reasons described below, the Court finds that Plaintiff fails to state a claim for violation of his constitutional rights. Plaintiff is

---

[1] On February 27, 2017, Plaintiff consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c) (ECF No. 6), and no other parties have made an appearance. Therefore, pursuant to Appendix A(k)(4) of the Local Rules of the Eastern District of California, the undersigned shall conduct any and all proceedings in the case until such time as reassignment to a District Judge is required. Local Rule Appendix A(k)(3).

1

given leave to amend his complaint if he believes that additional facts would state a claim under the legal principles described below.

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678. While factual allegations are accepted as true, legal conclusions are not. Id.

To state a viable claim for relief, Plaintiff must set forth sufficient factual allegations to state a plausible claim for relief. Id. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

## II. SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff's complaint provides a detailed chronology of Plaintiff failing to receive the mental health treatment he requested. Plaintiff had been the victim of a stabbing incident on

September 27, 2013.  Following the incident, Plaintiff began requesting elevated mental health care.  On October 2, 2013, he explained that he was suffering great mental stress and could not think clearly or focus.  Plaintiff explained to mental health staff that Plaintiff believed he was being retaliated against by staff, and was being specifically targeted by prison officials.  The stabbing incident was the third incident that occurred against him.  Plaintiff asked the mental health staff to be placed somewhere he could sleep, be left alone, and receive adequate mental health care assistance.

During a one-on-one mental health counseling sessions in October, 2013, Plaintiff's mental health clinician, Dr. Lacy, assured Plaintiff she would speak to mental health authorities to see what could be done to get him additional mental health assistance.  She indicated she would request that Plaintiff remain at New Folsom Prison until she had received an adequate response.

However, on October 29, 2013, Plaintiff was told that he was being transferred to Kern Valley State Prison (KVSP).  Plaintiff arrived at KVSP on October 30, 2013.  On November 7, 2013, Plaintiff received a phone call from a mental health psychologist, Dr. Morgan, at New Folsom prison regarding a health care appeal he had filed while there.  Dr. Morgan explained that she could not address the matter any longer because he had been transferred, but would forward his information to the assigned mental health clinician at the new location.

On November 13, 2013, Plaintiff was interviewed by his newly assigned mental health clinician at KVSP, Dr. Barajas.  Plaintiff explained that he was extremely depressed and could not deal with his current living situation, that he was being retaliated against by prison staff, that he had recently been stabbed, and that he needed placement into a mental health treatment facility in order to gather himself and recuperate.  Plaintiff requested transfer to an institution that provided mental health assistance so he could be left along and try to regain focus, balance, and a sense of purpose.

Dr. Barajas said that he would recommend mental health placement for Plaintiff's upcoming prison classification committee hearing scheduled for November 19, 2013.  At that hearing, Plaintiff requested such a transfer, but the committee told Plaintiff that they had not

received any recommendation for mental health transfer from Dr. Barajas. When Plaintiff finally confronted Dr. Barajas, Dr. Barajas said "I didn't have a chance to get to it." Plaintiff then asked for group therapy, anger management classes, or whatever was available at KVSP. Dr. Barajas said "I will put you on the waiting list for group therapy." However, Plaintiff later learned that there was no group therapy or other mental health programs at KVSP.

Plaintiff then saw the second level appeal reviewer, B. Mason, who offered to have Plaintiff see Dr. Barajas more frequently in order to receive additional one-on-one counseling. Plaintiff declined because he no longer trusted Dr. Barajas due to his untruthfulness, unprofessionalism, and carelessness.

Plaintiff continued to seek transfer to a different institution for mental health care. Plaintiff's request was denied by R. M. Hutchinson, Chief Executive Officer of mental health services. Mr. Hutchinson wrote in his denial, "The professional judgment of the mental health staff working with you indicates that you are at the appropriate level of mental care." Plaintiff unsuccessfully tried to appeal this decision. In Plaintiff's appeals, Plaintiff indicated that "A) it was improper, deceitful and unprofessional for his assigned mental health clinician to be untruthful and even go as far as to sign the plaintiff up for group therapy/anger management classes that didn't even exist, B) that he could not focus/function on a daily basis in his living environment and needed serious help, and C) he was placed in an institution that was well known for riots, shootings, extensive lockdowns and various other unproductive activity that was unconducive to Plaintiff's state of being."

Plaintiff continued suffering from feelings of hopelessness and despair and contemplated suicide. Plaintiff was then framed by KVSP administrative staff and, on May 1, 2014, approached by prisoners in reaction to untruths spread by staff members. A fight ensued. Plaintiff was shot by a riot gun. After prison lockdown status was raised, Plaintiff was approached by another prisoner, which triggered a full scale racial riot in which inmates were beaten and stabbed. Plaintiff saw no reason to avoid such altercations, as he had been doing prior to being denied mental health assistance. Plaintiff indicated on his 602 appeals that he

felt like harming others in order to be left alone, but would prefer to receive mental health assistance and placement in a different facility.

On August 4, 2014, Plaintiff was placed in KVSP's administrative segregation unit and charged with battery on an inmate. Mental staff told Plaintiff that he should have talked to someone before having such an episode. Plaintiff said that he had been trying to talk to someone for a long time. It was determined by mental health staff that the Plaintiff's mental disorder contributed to his behavior and should be considered in any penalty.

While in administrative segregation, Defendant R. M. Hutchinson told Plaintiff that "somebody slipped up" and he would be considered for Enhanced Outpatient Program at the next interdisciplinary treatment team hearing.

However, on January 20, 2015, administrative staff told Plaintiff he was being transferred to Corcoran State Prison, Security Housing Unit (SHU). Plaintiff arrived there on January 23, 2015. At Corcoran, Plaintiff's mental health clinician, Dr. Tepperman, informed Plaintiff that due to a recent court order regarding Corcoran's SHU, Plaintiff would be faced with many delays. Around September 2015, Plaintiff's mental health clinician took a leave of absence. Plaintiff went without a mental health clinician for approximately 6-8 weeks. A different mental health clinician, Dr. Lester, arrived at Corcoran in November 2015, but she was not properly trained or helpful.

On January 12, 2016, Plaintiff was approached by his correctional custody counselor, J. Torres, and told that his SHU term would be over in approximately 60 days. Torres asked which institution Plaintiff wished to be transferred to. Plaintiff said he was not interested in any of the institutions to choose from because he wanted an institution that deals with inmates in need of mental health treatment.

On January 12, 2016, a classification committee was held to determine what to do with Plaintiff. Plaintiff gave Torres a two page statement discussing Plaintiff's recent mistreatments by prison staff. The statement concerned the injustices that Plaintiff had suffered, including at KVSP. The classification committee met without Plaintiff and determined that Plaintiff should be transferred back to KVSP. According to the chrono, it appears that Torres did not provide

the Committee with Plaintiff's written statements, Torres recommended that Plaintiff be transferred to KVSP, Torres said falsely that KVSP was Plaintiff's preferred institution, and also indicated falsely that KVSP was near Plaintiff's family. Plaintiff filed a grievance challenging his transfer. Plaintiff met with M. Hoggard regarding his administrative appeal and told Hoggard that Torres had something personal against him. Hoggard said he would leave the situation as it was and ended the interview saying "Enjoy your trip back to Kern Valley."

On March 18, 2016, Corcoran staff demanded that Plaintiff pack and leave his cell in order to transfer to KVSP. Plaintiff refused. Plaintiff informed the correctional sergeant that it would be improper for him to go to KVSP because he had just served an 18-month SHU term for assaultive actions against another prisoner of a different race, which triggered a full scale racial riot where many inmates were stabbed, beaten, pepper strayed and shot with riot guns. Moreover, Plaintiff was scheduled for a mental health hearing on March 22, 2016. Prison staff insisted that Plaintiff get on the bus for transfer to KVSP. Plaintiff said there were critical issues that needed to be addressed and it was becoming too much of a stressful matter for him.

On Monday morning, March 21, 2016, Plaintiff was forcibly removed from his cell after several warnings. Plaintiff was not permitted to speak with the mental health clinician. Captain Gallagher ordered a tear gas grenade to be tossed into Plaintiff's cell. Plaintiff was also pepper sprayed. Plaintiff was finally handcuffed and dragged out of his cell. Plaintiff was left to lay cold and shivering for approximately 90 minutes on a gurney, unable to decontaminate.

Plaintiff arrived at KVSP in the afternoon of March 21, 2016. He was admitted to a mental health crisis bed at KVSP on March 23, 2016. KVSP mental health staff conducted and completed a classification committee hearing with the plaintiff in absentia and declared the plaintiff unfit for KVSP general population, and recommended immediate transfer to a qualified facility that houses Enhanced Outpatient Program (E.O.P.) inmates.

On or about April 5, 2016, Plaintiff was told that in order to transfer from KVSP to a proper mental health care prison, he would have to discharge into KVSP general population to

be seen by a KVSP classification committee so that his transfer could be redirected to a proper mental health care treatment prison.

Plaintiff discharged from KVSP mental crisis unit to KVSP general population on or around April 6, 2016.  When back at KVSP general population, Plaintiff was held confined in his cell as an unclassified inmate until April 12, 2016.

On April 12, 2016, while in a holding cage waiting for the classification committee, Captain J. Acebedo stated that Plaintiff was going to be classified as an E.O.P. inmate and would be transferred because he couldn't be housed among the non-E.O.P. inmates.  Later that day, on April 12, 2016, Plaintiff was classified by KVSP classification committee as an E.O.P. inmate in need of urgent transfer to a proper mental health care treatment facility.

After being classified, Plaintiff returned to his housing unit and was told by his unit floor officer, "if you wanna go trade in your orange jumpsuit for Blue denims and get all the rest of your laundry from the laundry room, go and get it yourself."  Plaintiff was released from his housing unit, reported to the prison laundry room, receiving his clothing, and then returned to his housing unit.  When returning back to his housing unit, Plaintiff was told by his unit's control booth officer, "You can't come back inside until yard time is over."  Plaintiff informed the control booth officer that he only went to get closing and that he was an E.O.P. inmate waiting to leave and shouldn't even be on the yard.  The control booth officer looked at the papers and said "I don't see anything about E.O.P., you've been cleared for yard and program"  Plaintiff walked away and stood waiting for yard recall.  While waiting for yard recall, Plaintiff was approached and hit from behind and knocked unconscious.  Plaintiff was rushed by ambulance to Delano Regional Medical Center where he remained unconscious for several hours.  He suffered severe head injuries.

### III.     EVLUATION OF PLAINTIFF'S EIGHTH AMENDMENT CLAIMS BASED ON DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS

#### A.     Legal Standards

Section 1983 provides a cause of action against any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation

of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). "In a § 1983 action, the plaintiff must also demonstrate that the defendant's conduct was the actionable cause of the claimed injury. To meet this causation requirement, the plaintiff must establish both causation-in-fact and proximate causation." Harper v. City of L.A., 533 F.3d 1010, 1026 (9th Cir. 2008) (internal citations omitted). Proximate cause requires "'some direct relation between the injury asserted and the injurious conduct alleged.'" Hemi Group, LLC v. City of New York, 559 U.S. 1, 130 (2010) (quoting Holmes v. Secs. Investor Prot. Corp., 503 U.S. 258, 268 (1992)).

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006), (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,' " and (2) "the defendant's response to the need was deliberately indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation and internal quotations marks omitted), overruled on other grounds WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc)). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." McGuckin, 974 F.2d at 1059–60 (citing Wood v. Housewright, 900 F.2d 1332, 1337–41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200–01 (9th Cir. 1989)).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d

1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi, 391 F.3d at 1058. Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

### B.     Application to Plaintiff's Complaint

Plaintiff's complaint documents in detail Plaintiff's request for mental health treatment. It was not until Plaintiff is placed in KVSP's mental care crisis bed that he received any such treatment.  His requests are often thwarted by transfers and other administrative issues. Moreover, some of the requested treatment doesn't appear available at the various institutions, even though some prison staff told him it was.

The Court finds that Plaintiff's allegations do not set forth a constitutional claim for Cruel and Unusual Punishment under the Eighth Amendment for a few reasons.  Plaintiff does not allege that any specific defendant knew that he required a certain treatment and then purposefully refused to provide it.  Instead, Plaintiff recounts how he told various staff that he required treatment but they failed to adequately forward his request and provide appropriate consultations to evaluate his needs.  While the Court recognizes that their delay, sometimes after saying that they will take action, is frustrating and perhaps even untruthful, it does not

establish cruel and unusual punishment for a failure to provide medical care while knowing that it is needed.

Moreover, Plaintiff's mental condition as described does not rise to the level of serious medical need for purposes of the Eighth Amendment's cruel and unusual punishment clause. Plaintiff has not been diagnosed with any specific mental health condition by a medical professional. Similarly, Plaintiff was not prescribed a certain treatment or medication that was needed to treat a specific mental health condition. Instead, Plaintiff alleges that he was "under extreme levels of stress and strain," and requested to "be left alone to try to regain focus, balance, and a sense of purpose." It may be that time alone in a mental health unit would have helped Plaintiff deal with the difficulties and depression associated with prison life, especially given Plaintiff's past issues and inmate attacks. But such difficulties do not constitute a serious medical need under the constitutional standard, and failure to provide a place "to be left alone to try to regain focus" does not establish cruel and unusual punishment. It may be that Plaintiff has a valid disagreement with his mental health professionals, or even that such mental health professionals were negligent in providing him additional attention. But that does not establish that they violated the U.S. Constitution and subjected him to cruel and unusual punishment.

## IV. EVALUATION OF PLAINTIFF'S EIGHTH AMENDMENT CLAIM FOR EXCESSIVE FORCE

### A. Legal Standards

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not… use excessive physical force against prisoners." Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811 (1994) (citing Hudson v. McMillian, 503 U.S. 1 (1992)). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is… whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7 (citing Whitley v. Albers, 475 U.S. 312 (1986)).

When determining whether the force was excessive, the court looks to the "extent of the injury suffered by an inmate…, the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.' " Hudson, 503 U.S. at 7 (quoting Whitley, 475 U.S. at 321).  While *de minimis* uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Hudson, 503 U.S. at 9 (citing Whitley, 475 U.S. at 327).

### B.     Evaluation of Plaintiff's Complaint

Plaintiff describes being forcibly extracted from his cell in order to get on the transfer bus to KVSP, including being exposed to tear gas and pepper spray.  Plaintiff describes a large amount of force being used.  The question is whether the force was done do maliciously and sadistically harm Plaintiff, or to maintain and restore discipline.

While the Court is sympathetic to the large amount of force used, Plaintiff's allegations demonstrate that the force was used for the purpose of extracting Plaintiff from his cell, and not in a malicious and sadistic way with the purpose to cause pain to Plaintiff.  Plaintiff alleges he refused to exit his cell in order to transfer.  He alleges that a correctional sergeant asked "Are you gonna pack your property and get on the bus?"  Plaintiff responded "by informing the correctional sergeant that he was not going to do anything until he spoke with his mental health clinician."  The correctional sergeant then locked Plaintiff's tray slot door and turned off the water to the sink and toilet in the call.  A couple of hours passed with that approach to extracting Plaintiff.  The correctional lieutenant ordered Plaintiff to be handcuffed, and Plaintiff responded that he was not going to do so.  The correctional lieutenant then brought a cart containing tear gas, helmets, shields and other equipment and put it in front of Plaintiff's call.  Prison staff left those items in front of Plaintiff for "awhile."  A captain asked again if Plaintiff would get on the bus.  Plaintiff and correctional staff discussed the situation more, with correctional staff warning that they would forcibly extract Plaintiff and Plaintiff refusing to

leave the cell. It was only after these repeated warnings and less forcible attempts that prison officials eventually used tear gas and pepper spray to extract Plaintiff from his cell.

Based on these facts, although the amount of force was high, it was not done for sadistic and malicious reasons in violation of Plaintiff's Eighth Amendment rights. Prison staff also made attempts to temper the use of force. Furthermore, no force was used after extracting Plaintiff from his cell. To use force to enforce prison orders is not cruel and unusual punishment under the Eighth Amendment based on the legal standards described above.

## V. EVALUATION OF PLAINTIFF'S EIGHTH AMENDMENT CLAIM FOR FAILURE TO PROTECT

### A. Legal Standards

Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 825, 833 (1994). To establish a violation of this duty, the prisoner must establish that prison officials were deliberately indifferent to serious threats to the inmate's safety. Id. at 834. "'Deliberate indifference' has both subjective and objective components." Labatad v. Corr. Corp. of Am., 714 F.3d 1155, 1160 (9th Cir. 2013). The prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." Farmer, 511 U.S. at 837. "Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" Labatad, 714 F.3d at 1160 (quoting Farmer, 511 U.S. at 847).

### B. Evaluation of Plaintiff's Complaint

Plaintiff alleges at the end of his complaint that he was attacked by an inmate at KVSP when he was left exposed to the general population, despite a known enemy threat and his classification status allegedly preventing such mixture. Plaintiff's facts show a sufficient relationship between being exposed to a known threat and his injury.

However, Plaintiff has not alleged that any individual defendant was deliberately indifferent to his safety. He does not state the name of the officer who released him to the yard or allege that he should not have done so according to policy. It appears that the control booth officer did not have notification of the dangers or his E.O.P. status. Based on the facts as alleged, there appears to have been a misunderstanding that resulted in Plaintiff being exposed to enemy inmates, rather than a violation of Plaintiff's Eighth Amendment rights.

The Court will provide Plaintiff with leave to amend, however, for the purpose of allowing Plaintiff to allege additional facts that would demonstrate that an individual defendant or defendants were deliberately indifferent to his safety when he was left exposed to an enemy inmate attack.

## VI.    CONCLUSION

The Court finds that Plaintiff's Complaint fails to state any cognizable claim upon which relief may be granted under § 1983.

Plaintiff may choose to file an amended complaint, if he believes that additional factual allegations would state a claim under the legal standards described above. Should Plaintiff choose to amend the complaint, the Amended Complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal, 556 U.S. at 678; Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555). There is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 677. Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones, 297 F.3d at 934 (emphasis added). Plaintiff should state clearly, in his own words, what happened and how each defendant's actions violated the particular right described by Plaintiff.

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding allegations of events occurring or claims arising after the original

Complaint. Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint.

If Plaintiff decides to file an amended complaint, he is advised that an amended complaint supersedes the original complaint, Lacey v. Maricopa County, 693 F. 3d 896, 907 n.1 (9th Cir. 2012) (*en banc*), and it must be complete in itself without reference to the prior or superseded pleading. Local Rule 220. Once an amended complaint is filed, the prior complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;
2. Within **thirty (30) days** from the date of service of this order, Plaintiff shall either:
    (1) File an amended complaint curing the deficiencies identified in this order, or
    (3) Notify the Court that he does not wish to file an amended complaint, subject to dismissal of claims consistent with this order, such that Plaintiff preserves his right to appeal this order;
3. Should Plaintiff choose to amend the complaint, Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:16-cv-01924-EPG (PC); and

\\\
\\\
\\\
\\\
\\\

4. If Plaintiff fails to comply with this order, this action may be dismissed for failure to comply with a Court order.

IT IS SO ORDERED.

Dated: __March 10, 2017__        /s/ *Erica P. Grosjean*
                                 UNITED STATES MAGISTRATE JUDGE