UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOY TERRELL SMITH,<br><br>        Plaintiff,<br><br>    v.<br><br>R.M. HUTCHINSON, et al,<br><br>        Defendants. | 1:16-cv-01924-EPG (PC)<br><br>ORDER DENYING MOTION TO OBJECT THE DISMISSAL OF CLAIMS AGAINST DEFENDANTS R.M. HUTCHINSON AND J. GALLAGHER<br><br>(ECF NO. 12) |

Plaintiff Toy Terrell Smith ("Plaintiff") is proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.[1] Plaintiff claims that he did not receive adequate mental health care, was forcibly removed from his cell in order to transfer to another prison, and suffered an inmate attack when staff left him exposed at a prison with known enemies.

On August 21, 2017, Plaintiff filed a motion objecting to the dismissal of Defendants R. M. Hutchinson and J. Gallagher. (ECF No. 12). The Court dismissed claims against those two Defendants in its screening order dated August 4, 2017. (ECF No. 11).

---

[1] On February 27, 2017, Plaintiff consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c) (ECF No. 6), and no other parties have made an appearance. Therefore, pursuant to Appendix A(k)(4) of the Local Rules of the Eastern District of California, the undersigned shall conduct any and all proceedings in the case until such time as reassignment to a District Judge is required. Local Rule Appendix A(k)(3).

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 60(b) governs grounds for relief from an order:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

## II. ANALYSIS REGARDING DEFENDANT J. GALLAGHER

In his motion objecting to the Court's screening order, Plaintiff argues that the Court made a mistake in dismissing Defendant J. Gallagher. Plaintiff claims that Plaintiff informed Gallagher that Plaintiff's prison administrative hearing concerning his housing placement was in error and that Plaintiff was actually a mental health patient due to be sent to a mental health facility; that the prison nevertheless sent Plaintiff back to the same prison where Plaintiff had contributed to a full scale racial riot and where many of the inmates involved in the riot remained; and Plaintiff's mental health clinician informed Gallagher prior to the use of force that Plaintiff was ordered to be seen in two days by the administrative mental health review board.

The Court has reviewed Plaintiff's allegations against Defendant Gallagher. Plaintiff only mentions J. Gallagher in the portion of his complaint concerning Claim 3, alleging excessive force in March 2016 due to forcible extraction from his cell. Plaintiff alleges that Defendant J. Gallagher was facility captain in the Short Term Restrictive Housing Unit (STRHU). Plaintiff alleges, regarding Defendant Gallagher "The information on Plaintiff's case mishandlings by classification committee, programming needs and upcoming mental

health hearing to have his mental health care treatment level elevated was directly conveyed by (STRHU) sergeants to J. Gallagher via telephone on two separate occasions. Defendant Gallagher's response was that he did not care about any of the things he was being informed of and Plaintiff "Better pack his shit and if not, he is coming tomorrow with the force of hell to drag his ass on the bus without his personal property." (ECF No. 10, at p. 18). Defendant Gallagher then become involved in extraction from Plaintiff's cell when Plaintiff refused orders to leave. For example, Defendant Gallagher informed the lieutenant and other correctional staff to suit up and prepare to extract plaintiff from the cell.

The Court has reviewed its prior order and does not believe it made a mistake in its finding that the allegations against Defendant Gallagher did not constitute excessive force. Regarding Plaintiff's claims that the forcible extraction violated the Eighth Amendment's prohibition against cruel and unusual punishment, the Court found in its screening order:

> Based on these facts, although the amount of force was high, it was not done for sadistic and malicious reasons in violation of Plaintiff's Eighth Amendment rights. Prison staff also made attempts to temper the use of force and proceeded slowly in their elevation of force. Furthermore, no force was used after extracting Plaintiff from his cell. It thus appears that, even if the allegations are true, officers used force in order to extract Plaintiff from his cell and not to sadistically cause him pain. Note this constitutional claim does not turn on whether the transfer was in fact appropriate or not. The correctional officers were under orders to transfer Plaintiff to another institution and used force to carry out that direction, rather than to hurt Plaintiff. To use force to enforce prison orders is not cruel and unusual punishment under the Eighth Amendment based on the legal standards described above.

(ECF No. 11, at p. 12). Plaintiff's motion for reconsideration does not argue that this finding was in error. Although Defendant Gallagher allegedly used strong language, such as saying "Anyway it goes, you're getting on that bus," and "Better pack his shit and if not, he is coming tomorrow with the force of hell to drag his ass on the bus without his personal property," these comments do not constitute excessive force.

Plaintiff's motion for reconsideration also appears to argue that Defendant Gallagher should be liable for a failure to protect claim for not stopping Plaintiff's transfer to a yard where Plaintiff had previously started a riot. Regarding that claim, the Court previously found:

> Unlike his original complaint, Plaintiff has now alleged specific facts as to specific defendants that he alleges caused Plaintiff to be assaulted by being in KVSP's general population yard despite known threats to his safety. Plaintiff alleges that J. Torres elected not to enter Plaintiff's written statement about known threats into the classification record and that she knowingly recommended Plaintiff be sent back to the same prison where the racial riot occurred. Plaintiff also alleges that defendant M. Hoggard had the power to alter this decision based on facts from the Plaintiff but chose to leave the transfer in place. Finally, Plaintiff alleges that Defendant J. Acebedo was responsible for putting all correctional staff on notice that Plaintiff was an EOP inmate, but failed to do so.

(ECF No. 11, at p. 13).

Plaintiff's complaint fails to allege facts indicating that Defendant Gallagher caused Plaintiff's transfer to the wrong yard. First of all, Plaintiff only named Defendant Gallagher in the claim for excessive force, as described above. (ECF No. 10, at p. 15). Plaintiff also does not allege that Defendant Gallagher made the decision to transfer him to the yard, or had the power to alter that decision, as he did with the other Defendants named above. There is no allegation that Defendant Gallagher was part of the classification committee. Instead, it appears that Defendant Gallagher's involvement consisted of receiving two phone calls at the time when Plaintiff was refusing to leave his cell for many reasons, including "mishandlings by classification committee, programming needs and upcoming mental health hearing to have his mental health care treatment level elevated." Defendant Gallagher, who was captain in Plaintiff's housing unit, gave the orders to extract Plaintiff from his cell despite his objections. Plaintiff's allegations demonstrate that Defendant Gallagher was following orders regarding Plaintiff's transfer made by other prison officials. It does not show that Defendant Gallagher made those decisions, had the power to change those decisions, or had sufficient information about Plaintiff's classification to evaluate Plaintiff's safety risks.

## III. ANALYSIS REGARDING DEFENDANT R.M. HUTCHINSON

In his motion objecting to the Court's screening order, Plaintiff argues that the Court also made a mistake in dismissing Defendant R.M. Hutchinson. Plaintiff claims that Defendant R.M. Hutchinson in his administrative health care appeal denied Plaintiff appropriate mental health care treatment. Plaintiff also claims that the Court claimed that the doctor who interviewed Plaintiff for a mental health evaluation after the riot incident found that Plaintiff's mental disorder did not contribute to Plaintiff's decision to cause a riot, when Plaintiff alleged that the mental health specialist found that the disorder did contribute to Plaintiff's decision.

The Court found as follows when it screened this claim in its prior order:

> The Court finds that Plaintiff's allegations do not set forth a constitutional claim for Cruel and Unusual Punishment under the Eighth Amendment for a few reasons. Plaintiff does not allege that any specific defendant knew that he required a certain treatment and then purposefully refused to provide it. Instead, Plaintiff alleges that he repeatedly asserted that he needed care. He also alleges that various staff told him he would be screened for a higher level of care. But at no time does he allege that a medical professional said he needed a certain type of mental health care, or that he suffered from a certain type of mental health need, and then purposefully failed to provide care. Indeed, Plaintiff alleges that he was told that professionals disagreed with him about his need for care. He also alleges that he did eventually receive some treatment through being in a crisis bed.

> Moreover, Plaintiff's mental condition as described does not rise to the level of serious medical need for purposes of the Eighth Amendment's cruel and unusual punishment clause. Plaintiff has not been diagnosed with any specific mental health condition by a medical professional. Similarly, Plaintiff was not prescribed a certain treatment or medication that was needed to treat a specific mental health condition. Plaintiff described how he was under "mental strain and anguish," was suffering from general mental strain after experiencing serious traumatic injury, felt "hopeless, depressed, unfocused and lost faith in mental health care services." He also describes how he acted aggressively toward another inmate because "he could not focus nor function properly." These allegations fall short of indicating a medical condition in need of specific treatment. Rather, Plaintiff describes being depressed about his prison life and exposure to prison

> violence, at least some of resulted from his own actions attacking other inmates. To state a violation of constitutional law, Plaintiff's medical condition must rise above the mental challenges inherent in prison life.
>
> Furthermore, Plaintiff alleges repeated disagreements with his mental health professionals regarding his level of care. If true, such allegations would indicate that mental health professionals could have been negligent in providing him additional attention. But that does not establish that they violated the U.S. Constitution and subjected him to cruel and unusual punishment.

(ECF No. 11, at p. 10-11).

The Court has reviewed Plaintiff's allegations and does not find that it made a mistake in its order. First of all, Plaintiff's objection does not call into question the Court's finding regarding Plaintiff's failure to allege a serious medical need, which is a requirement for any claim for violation of the Eighth Amendment based on deliberate indifference to serious medical needs. Plaintiff's complaint also supports the Court's conclusion that he has failed to allege facts indicating that Defendant Hutchinson was aware of a serious medical need and yet refused to provide it. Plaintiff's complaint alleges as to Dr. Hutchinson in relevant part:

> Dr. Hutchinson gave a written response which indicated that in his decision to deny plaintiff's action requested for relief he relied on a Licensed Clinical Social Worker's (LCSW) report after the (LCSW) interviewed Plaintiff. The report that Dr. Hutchinson based his decision on when denying Plaintiff's action requested stated "It could be arranged for Plaintiff to see his primary clinician at closer intervals than had been previously scheduled." Dr. Hutchinson was aware of the report where it was confirmed by the (LCSW) that Plaintiff's primary clinician untruthfully continued to inform Plaintiff that he would place on a waiting list for group therapy, anger management etc. that actually did not exist. . . . Dr. Hutchinson's response indicated, "It is the professional judgment of the mental health staff working with you that you are at the appropriate level of mental health treatment," if not satisfied, submit your appeal to the third level."

(ECF No. 10, at p. 8). These allegations do not set out a claim against Dr. Hutchinson for cruel and unusual punishment based on deliberate indifference to serious medical needs for the reasons stated in the Court's prior order.

The Court does agree that its prior order had a misspelling. In reciting Plaintiff's allegations in the complaint, the Court summarized:

> On August 12, 2014, Plaintiff was interviewed for a mental health evaluation by Dr. M. Rodriguez to determine if Plaintiff had a mental disorder that contributed to the action of Plaintiff attacking another inmate. That doctor reasoned that Plaintiff's mental disorder ***did no fact*** contribute to the disturbance and suggested that Plaintiff's mental health factors be taken into account when assessing any penalty on Plaintiff. Plaintiff's mental health evaluation team told Plaintiff he should have spoken to someone about his problems before. Plaintiff stated he had told people about his problems many times before.

ECF No. 11, at p. 4 (emphasis added). The order should have stated in relevant part that "That doctor reasoned that Plaintiff's mental disorder ***did in fact*** contribute to the disturbance." That would have been consistent with the Plaintiff's allegations. (ECF No. 10, at p. 10). While that typographical error was a mistake, it did not change the Court's conclusion, described above. Notably, that interview happened on August 12, 2014. Dr. Hutchinson's denial of Plaintiff's appeal occurred prior to that date. After that date, Plaintiff filed another appeal and he was allegedly interviewed by Senior Psychologist Supervisor Dr. Gunther on behalf of Dr. Hutchinson, who told Plaintiff that "he would have his mental health care treatment elevated to Enhanced Outpatient Program status." There is, thus, still no allegations that Defendant Hutchinson was aware of a serious medical need and deliberately refused treatment for such need.

\\\
\\\
\\\
\\\

7

**IV. CONCLUSION AND ORDER**

For the foregoing reasons, Plaintiff motion to object to the dismissal of claims against Defendants R. M. Hutchinson and J. Gallagher (ECF No. 12), is denied.

IT IS SO ORDERED.

Dated: __**October 16, 2017**__  /s/ *Erin P. Grosjean*
UNITED STATES MAGISTRATE JUDGE